IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF TENNESSEE
NASHVILLE DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA ) | |
|     Plaintiff, ) | |
| ) | |
| V. ) | Case No. 3:22-cr-109-1 |
| ) | Chief Judge Crenshaw/Frensley |
| JARAY MARVELL FORDHAM ) | |
|     Defendant. ) | |

## MEMORANDUM AND ORDER

Pending before the Court is the Defendant's Motion to Reconsider Motion to Reopen Detention Hearing. Docket No. 25. In this motion, Defendant asks the Court to reconsider its ruling on his Motion To Reopen Detention Hearing Or In The Alternative To Revoke The Detention Order And Release Mr. Fordham During Trial (Docket No. 12). For the reasons set forth herein, the Defendant's motion (Docket No. 25) is **GRANTED**.

## PROCEDURAL HISTORY

The Defendant was originally charged in this matter by way of a criminal complaint on October 14, 2021. Docket No. 1. The criminal complaint alleged violations of 21 U. S. C. §841 (a) possession of heroin with intent to distribute and 18 U. S. C. § 924 (c) possession of a weapon in furtherance of a drug trafficking crime related to the Defendant's arrest on the same charges in same court on June 1, 2021. *Id.*

On February 15, 2022, the Defendant was arrested in the Eastern District of Michigan and following a detention hearing in that district, was ordered detained pending trial. Docket No. 3-11. The Defendant was indicted in the charges on March 21, 2022 (Docket No. 4) and had an initial appearance and arraignment in this district on March 28, 2022 (Docket No. 8) .

On April 22, 2022, the Defendant filed a Motion To Reopen Detention Hearing Or In The

Alternative, Motion To Revoke Detention Order And Release Mr. Fordham Pending Trial. Docket No. 12. On May 19, 2022, following briefing by the Parties, the Court denied the Defendant's motion to reconsider the initial detention order and instructed the Defendant to file a separate motion to the extent he sought review of the detention order by the District Court. Docket No. 19. On May 20, 2022, the Defendant filed a motion to revoke the detention order and to release the Defendant pending trial. Docket No. 20. The District Court held a status conference on May 31, 2022 regarding the motion to revoke and suggested, in light of the Court's trial calendar, the Defendant may wish to file a motion to reconsider before the Magistrate Judge. Docket No. 25, 32 pp. 2-3.

On June 9, 2022, the Defendant filed a motion for reconsideration. Docket No. 25. On June 30, 2022, the Court held a hearing on the pending motions. Docket No. 31.

**FACTUAL BACKGROUND**

On June 1, 2021, Nashville Airport Police officers responded to a call at the airport regarding a vehicle.[1] After allegedly detecting an odor of marijuana from the vehicle and observing a plastic bag containing a white substance in plain view between the rear passenger seats, the occupants of the vehicle were removed and detained. Verbal consent was obtained to search the vehicle for narcotics and weapons and the officers were advised that there was a firearm in the rear seat. A pistol was located in the vehicle along with a small bag of suspected heroin and multiple small bags of suspected heroin on the person of one of the occupants of the vehicle. One of the occupants advised that the firearm belonged to her brother and that he was on his way to retrieve it. Thereafter, the Defendant arrived on the scene in a separate vehicle. The Defendant advised one of the officers that the firearm seized by them belonged to him.

---

[1] The facts are taken from the Criminal Complaint (Docket No. 1) which were adopted by the testifying agent at the hearing on the Defendant's motion to reopen. Docket No. 32, pp. 58-59.

Apparently while waiting for officers to return the firearm to him, the Defendant removed a large sum of currency from his pocket which he reported to be in excess of four thousand dollars. When officers requested consent to search his vehicle he declined; however, by then, officers had brought a narcotics detection canine which allegedly alerted on the vehicle. Thereafter, the Defendant consented to the search of his vehicle. Inside his vehicle, officers located a loaded firearm as well as two bags of suspected heroin wrapped in a pair of child's sweatpants. Two cell phones were found and seized as well. The Defendant was charged in state court with possession with intent to distribute heroin and possession of a firearm during a dangerous felony. Thereafter, a state search warrant was executed on the cell phones resulting in the discovery of information leading authorities to believe that the Defendant engaged in the sale of narcotics.

The Defendant was released on bond on the state charges on June 1, 2021. Docket No. 25-2. The Defendant remained on bond without incident until his arrest on February 15, 2022, in the Eastern District of Michigan.

On or about February 14, 2022, the Defendant traveled to the Detroit, Michigan area with his fiancée, twin infant children, and his mother to attend a funeral and celebrate Valentine's Day. The Defendant was staying at a hotel in Detroit with his fiancée and his children. After leaving the hotel by car to retrieve some infant formula, he apparently made a wrong turn and ended up at the international border with Canada. While there, he interacted with agents who discovered he had an outstanding unexecuted warrant as a result of the criminal complaint filed in this Court almost four months earlier. As a result of the outstanding warrant, the Defendant was taken into custody. A detention hearing was held in the Eastern District of Michigan on February 17, 2022. Docket No. 25-1. The Defendant was represented by counsel in those proceedings and afforded a full and fair opportunity to present whatever evidence he wished to

present.

The government proffered that the charges in the criminal complaint involved the Defendant's possession of a firearm along with two bags of heroin and a large sum of cash. Docket No. 25-1, p. 5. The government further argued that at the time of his arrest at the border, he possessed two firearms and a large sum of cash as he had at the time of his arrest in June of 2021. *Id.* at pp. 5-6. Further, the government proffered that on March 28, 2021, there was a murder in Flint, Michigan and it was determined that the Defendant had purchased a firearm recovered during the course of the investigation of that murder and that firearm had also been involved in a shots fired incident in August 2020. *Id.* The government further proffered that there was a murder in Nashville on January 31, 2021, at a gas station where the victim was driving the Defendant's car. There is no evidence the Defendant was present at any of the incidents and no charges are pending against the Defendant for any of the incidents.

Defense counsel likewise proceeded by proffer and advised the Court that the Defendant had appeared at all of his court dates during the time that he was on bond in state court. *Id.* at pp. 9-10. Defense counsel, in response to questions by the Court, indicated he was not aware of the exact conditions of Defendant's state court bond; specifically, whether they prohibited him from leaving Tennessee. *Id.* at pp. 10-11. Counsel proffered that the Defendant had gone out to get milk for his children, taken a wrong turn and ended up at the bridge to Canada. *Id.* at p. 12. Defense counsel further proffered that Defendant's mother was willing to serve as third party custodian for the Defendant, that he was unaware of the federal charges, was gainfully employed and had no criminal history apart from a DUI in 2007 when the Defendant was only 18 years old. *Id.* at pp. 12-14.

The Parties agreed that the presumption of detention applied in this case. The Court

4

expressed concern that the Defendant was on bond for state charges and that he was "found at the U. S./Canadian border several states away on February 14, 2022, with two guns and a lot of ammo." *Id.* at p. 16. The Court stated:

> [w]as that not a violation of his state bond conditions? I mean, can't imagine his bond allowed him to have ammo and guns let alone cross an international border, or attempt to.

*Id.*

After being advised by the pretrial services officer that they were unaware of his specific bond conditions, the Court reiterated:

> Okay. I can't imagine any bond condition anywhere that allows someone to have a gun, or to do international travel. But I mean, I guess sometimes you are allowed international travel, but a gun, I can't imagine.

*Id.* at p. 16.

At that point, defense counsel reminded the Court that the Defendant is not a felon and that the Court could impose conditions that the Defendant not purchase or possess firearms while on bond. *Id.* The Court adjourned the proceedings in order to allow the pretrial services officer to inquire about the conditions of the Defendant's state court bond. *Id.* at pp. 17-19. Following a forty two minute recess, the pretrial services officer reported that he had contacted the Court in Tennessee and was advised that while on release, individuals are "generally . . . supposed to stay away from alcohol and should have no new arrests" and "typically there are no travel restrictions." *Id.* at p. 20. The pretrial services officer further reported that the individual with whom he spoke "didn't know about guns." *Id.* Prior to the Court's ruling, defense counsel advised the Court that the Defendant's fiancée Britannica Frazier was in attendance in the courtroom. *Id.* at pp. 20-22.

The Court found probable cause as to the charges in the criminal complaint and also

found that the Defendant had rebutted the presumption of detention. *Id.* at pp. 23-24. The Court then considered the 3142(g) factors under the Bail Reform Act finding that the nature and the circumstances of the offense are serious, weighing against release. *Id.* at pp. 24-25. While not in dispute, the Court expressed skepticism about the Defendant's explanation as to how he arrived at the international border also noting his concern that the Defendant possessed two additional guns while facing gun and drug charges. *Id.* at pp. 25-26. The Court further noted that guns linked to the Defendant had been found in various places in the Sixth Circuit connected with various violent crimes. *Id.* at p. 26. The Court found that the Defendant posed a risk of nonappearance based on his arrest at an international border with guns and again expressed that "the Court is skeptical about that claim [that he arrived at the border inadvertently]" *Id.* at p. 26. The Court noted that the history and characteristics of the Defendant weighed in his favor for release specifically noting "his pretty light history of contact with the criminal justice system." *Id.* at pp. 27-28. After individually discussing the 3142 (g) factors the Court found as follows:

> [W]hat I find and what I see is a scenario where while on bond for the Tennessee state case, which involves a gun and heroin possession with intent to distribute, you're found in another state at an international border with two guns and lots of ammunition, two states away, while facing gun charges; and that your guns that were associated with you have been found in various places in this district and associated with violent crime. And when I put that together, in addition to three failures to appear in probation violation, although I found that the presumption has been successfully rebutted, that is there is enough evidence that's put forward to rebut that presumption, the Court finds by clear and convincing evidence that no condition or combination of conditions can reasonably assure the safety of the community. And I also find by preponderance of the evidence that no condition or combination of conditions can reasonably assure your appearance. And accordingly, I'm ordering that you be detained.

*Id.* at pp. 29-30.

## LAW AND ANALYSIS

18 U. S. C. §3142(f) expressly authorizes reopening the detention hearing when material

information that was not known to the movant at the time of the hearing comes to light. However, many courts have interpreted this provision strictly, holding that a detention hearing should not be reopened if the evidence was available at the time of the hearing. *United States v. Dillon*, 938 F. 2d 1412, 1415 (1st Cir. 1991); and *see United States v. Hare*, 873 F. 2d 796, 799 (5th Cir. 1989)(decision not to reopen detention hearing affirmed, because testimony of Defendant's family and friends is not new evidence.) Implicit in the authority to reopen a detention hearing is the court's reconsideration of prior ruling.

The Defendant asks the Court to reconsider the issue of bail in light of information not available at the original hearing. A detention hearing "may be reopened, before or after a determination by the judicial office any time before trial if the judicial officer finds that information exists that was not known to the movant at the time of the hearing and that has a material bearing on the issue whether there are conditions of release that will reasonable assure the appearance of such a person as required and the safety of any other person in the community." 18 U.S.C. § 3142(f)(2)(B).

Thus, a moving party must establish: (1) that information now exists that was not known to the movant at the time of the initial hearing; and (2) the new information is material to release conditions or flight dangerousness. *United States v. Hare*, 873 F. 2d 796 (5th Cir. 1989). The rationale for the rule is to encourage a party to be diligent in bringing forth all material evidence the first time a hearing is held and discourage piecemeal presentations or prolonged proceedings absent a demonstrated legitimate reason for not presenting the evidence. *United States v. Flores*, 856 F. Supp 1400, 1405 (E. D. CA. 1994). New evidence is material if there is a reasonable probability that the initial determination would have been different. *United States v. Havens,* 487 F. Supp 2d 335, 339-340 (W. D. N. Y 2007). The determination of whether to reopen a detention

7

hearing is within the discretion of the District Court. *United States v. Watson*, 475 F. Appx. 598, 599-600 (6th Circuit 2012).

In this matter, the Defendant argues that there is new and material evidence which supports reopening the detention hearing in this case. First, the Defendant argues that there is new evidence concerning his mother's suitability and viability to serve as a third party custodian not presented to the Court in Michigan. Docket No. 25, p. 2. Second, Defendant argues that there is new evidence concerning the fact that he left the hotel to buy milk for his children and ended up at the border accidentally. *Id.* at p. 3. Defendant contends that his fiancée could provide relevant testimony on this matter and corroborating evidence on her telephone to support this contention. *Id.* Finally, the Defendant argues that there is new evidence regarding his state bond conditions not available to the Court at the time of his initial bond hearing. *Id.* at pp. 3-4. The Defendant further contends that his attorney at the original hearing was ineffective by failing to present the information set forth above. *Id.* at pp. 4-5.

On June 30, 2022, the Court conducted a hearing to consider whether to reopen the detention hearing and if reopened, to consider the merits of the Defendant's argument that the Court reconsider its prior ruling and order he be released pending trial. Based upon the evidenced described below, the Court will reopen the detention hearing and address the issues raised by the Parties.

The Court declines to revisit its previous ruling that testimony from the Defendant's mother regarding her suitability as the third party custodian or testimony from the Defendant's fiancée about the circumstances surrounding his arrest in the Eastern District of Michigan were circumstances not known to the movant at the time of the hearing. Docket No. 19. Counsel necessarily had to have spoken to the Defendant's mother to proffer her as a third party custodian

in the first instance. A strategic decision was made to present her to the Court as a third party custodian by way of proffer, but nothing would have prohibited the Defendant from calling his mother as a witness or listing any additional necessary testimony about her suitability as a third party custodian. Likewise, the Defendant's fiancée was actually present at the Court proceedings and could have been called as a witness to explain circumstance around the Defendant's arrest in the Eastern District of Michigan. Her testimony was known to the Defendant and again, counsel made a strategic decision not to call her as a witness in the matter. This is perhaps because the government did not really contest that the Defendant inadvertently found himself at the border rather than some attempt on his part to flee the country. Docket No. 25-1, p. 4. In any event, because the government essentially conceded that point at the detention hearing, her testimony regarding the circumstances of the Defendant's arrest are not material to the issue of detention.

The issue of the Defendant's state court bond conditions however presents a different matter. While it is true that some courts have strictly construed the language "not known to the movant at the time of the hearing . . . holding that the hearing should not be reopened if the evidence was available at the time of the initial hearing," other courts have applied a less strict standard. That standard is whether there was a "complete lack of diligence" on the part of the moving party at the initial hearing. *United States v. Tommie*, 2011 WL 2457521 at *4 (Dist. Ariz. June 20, 2011). As the Defendant notes, Magistrate Judge Holmes has recently addressed this issue finding it appropriate to apply the more lenient standard. *United States v. Bills*, 3:19-cr-00069, Docket No. 33 (April 29, 2019).

While the decision of whether to reopen a detention hearing must necessarily be based on a case by case determination and would generally be the exception rather than the rule; the Court finds Judge Holmes' opinion persuasive as applied to the facts in the instant case relative to the

Defendant's state court bond conditions.

The Defendant was appearing in the Eastern District of Michigan for a detention hearing based upon an out of district criminal complaint. Docket No. 25-1. It is clear that the conditions of Mr. Fordham's release in state court were material to the detention determination and were ultimately relied upon by the Magistrate Judge ordering detention. *Id.* at pp. 29-30. The bond conditions were clearly not readily available as evidenced by the fact that the pretrial services officer was unable to obtain the bond conditions even after the Court took a nearly 45 minute recess in an attempt to determine those conditions. It does not appear that counsel for the Defendant made any additional efforts to obtain the bond conditions despite their obvious important to the proceedings and the Court's explicit interest to those conditions as they relate to the detention determination. While it may have been technically possible to obtain the bond conditions, it is clear that great effort was extended to do so but those conditions were never presented to the Court for consideration. Thus, the undersigned finds there was not a complete lack of diligence on the part of the movant and because of the significance of the bond conditions in the detention determination, the Court should exercise its discretion to reopen the detention hearing and reconsider the additional new information.

To the extent that the Defendant's state bond conditions (Docket No. 25-2) do not include a restriction on his travel or possession of a firearm and that the Defendant is otherwise not a prohibited person it does not appear that the Defendant was in violation of any of the conditions of his release on the state court charges based upon on his conduct at the time of his arrest in the Eastern District of Michigan. It is equally clear that the Magistrate Judge at the original hearing gave great weight to the presumed bond conditions that in fact did not exist. It was these nonexistent bond conditions that the Court relied heavily upon to find both that the

10

Defendant was a danger to the community and a flight risk. Docket No. 25-1, pp. 29-30.

Upon reconsideration of whether Defendant should be detained or released, including an evaluation of the new evidence together with the evidence offered at the initial detention hearing the Court finds that there are conditions of release that will reasonably assure the safety of the community and the Defendant's appearance at future court proceedings. The Court accepts the previous findings regarding the §3143(g) factors however, with respect to flight, the evidence does not support a finding that the Defendant poses a serious risk of nonappearance. That finding appears to be based upon the erroneous conclusion that the Defendant did not end up at the border inadvertently and that he was prohibited from crossing the border because of his bond conditions. First, the government does not argue and the proof does not establish that Defendant's arrest at the border was a result of an intention on his part to cross the border. It is important to note that the Defendant was unaware of the criminal complaint and charges in federal court at this time. He had been on bond in state court for over six (6) months, had attended all court proceedings and not made any effort to flee during that time. Finally, if his intention was to flee it is not clear why he would have abandoned his fiancée and infant children at a hotel in Detroit, Michigan rather than simply leaving them at their residence over the many months that he was on bond for the state court matter.

With respect to the issue of dangerousness, the Court finds that there are conditions that will reasonably assure the safety of the community. Most importantly, as it relates to the issue of reopening the detention hearing, the Court notes that great weight was given to the erroneous conclusion that the Defendant's state court bond prohibited him from possessing a firearm. Docket No. 25-1, pp. 29-30. In fact, nothing prohibited the Defendant from possessing a firearm at that time. But for the drugs discovered at the time of his arrest in June of 2021, his firearm

11

possession at that tome was not prohibited. Unlike his original arrest in June 2021, when the Defendant was arrested in February 2022, there were no drugs present, his bond did not preclude him from possessing a firearm and he was otherwise not prohibited from possessing a firearm. While the Court understandably believed that his firearm possession would be prohibited by his state court bond, that is simply not the case. Docket No. 25-2. Defendant's possession of a firearm that he is otherwise not prohibited from possessing does not form a basis for concluding that he is a danger to the community. Thus, the Court gives limited weight to his firearm possession at the time of his arrest at the border.

Likewise, the undersigned gives limited weight to the incidences occurring a year or more before the Defendant's arrest on the criminal complaint, none of which have resulted in any charges being brought against the Defendant. Finally, the Court gives great weight to the fact that the Defendant has been on bond without incident in state court since June of 2021. It appears that he has made all of his court appearances and has had no further contact with the criminal justice system apart from his arrest in the Eastern District of Michigan as a result of the instant criminal complaint. Further, his only conviction ever was for DUI in 2007, when he was 18 years old.

The Court finds that for the foregoing reasons, there are conditions that will reasonably assure the safety of the community and the Defendant's appearance at future court proceedings. Therefore, the Court orders that the Defendant be released subject to the following conditions:

(1) The defendant must not violate federal, state, or local law while on release.

(2) The defendant must advise the court or the pretrial services office or supervising officer in writing before making any change of residence or telephone number.

(3) The defendant must appear in court as required and, if convicted, must surrender as directed to serve a sentence that the court may impose.

(4) The defendant is placed in the custody of and reside with: **Felicia Todd** who agrees to (a) supervise the defendant, (b) use every effort to assure the defendant's appearance at all court proceedings, and (c) notify the court immediately if the defendant violates a condition of release or is no longer in the custodian's custody.

(5) submit to supervision by and report for supervision to the pretrial service office

(6) continue or actively seek employment.

(7) surrender any passport to the U. S Probation office

(8) not obtain a passport or other international travel document.

(9) abide by the following restrictions on personal association, residence, or travel: Middle District of Tennessee without prior approval by pretrial services

(10) not possess a firearm, destructive device, or other weapon.

(11) not use alcohol excessively.

(12) not use or unlawfully possess a narcotic drug or other controlled substances defined in 21 U.S.C. § 802, unless prescribed by a licensed medical practitioner. medical practitioner.

(13) submit to testing for a prohibited substance if required by the pretrial services office or supervising officer. Testing may be used with random frequency and may include urine testing, the wearing of a sweat patch, a remote alcohol testing system, and/or any form of prohibited substance screening or testing. The defendant must not obstruct, attempt to obstruct, or tamper with the efficiency and accuracy of prohibited substance screening or testing.

(14) participate in a program of inpatient or outpatient substance abuse therapy and counseling if directed by the pretrial services office or supervising officer.

(15) report as soon as possible, within 48 hours, to the pretrial services office or supervising officer, every contact with law enforcement personnel, including arrests, questioning, or traffic stops.

(16) Allow pretrial services to visit you at home or elsewhere at any time and the office to seize any contraband in plain view.

For the foregoing reasons, the Defendant's Motion For Reconsideration Of His Motion

For Hearing To Reopen Detention Hearing Or In The Alternative Motion To Revoke The

Detention Order And Release Mr. Fordham Pending Trial (Docket No. 25) is **GRANTED**. The Defendant is to be released pending trial of this matter, subject to the conditions herein.

This Order is stayed until July 22, 2022 at 2:00 p.m. at which time it will become effective.

**IT IS SO ORDERED.**

_____
**JEFFERY S. FRENSLEY**
**United States Magistrate Judge**

14

Case 3:22-cr-00109   Document 34   Filed 07/21/22   Page 14 of 14 PageID #: 341